## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### Southern Division

| | |
|---|---|
| GENE CHOICE, INC., <br><br>      Plaintiff, <br><br> v. <br><br> INVITROGEN CORPORATION, <br><br>      Defendant. | Civil Action No. CCB 02CV3670 |
| INVITROGEN CORPORATION, a Delaware corporation, <br><br><br>      Counterclaimant and Third-Party <br>      Plaintiff, <br><br> v. <br><br> GENE CHOICE, INC., a Maryland corporation, MICHAEL SMITH, an individual, and BRIAN SCHMIDT, an individual, <br><br><br>      Counterclaim Defendant and Third-Party Defendants. | |

## INVITROGEN CORPORATION'S ANSWER TO COMPLAINT, COUNTERCLAIMS & THIRD-PARTY COMPLAINT

Invitrogen Corporation ("Invitrogen"), through counsel, answers and responds to the specific numbered paragraphs in the Complaint of plaintiff Gene Choice, Inc. ("Gene Choice") as follows:

### Jurisdiction & Venue

1.     Invitrogen admits the allegations in paragraph 1 of the Complaint.

2.     Invitrogen admits the allegations in paragraph 2 of the Complaint.

3.    In response to the allegations in paragraph 3 of the Complaint, Invitrogen admits that Gene Choice purports to state a claim pursuant to Title 35 of the United States Code, Section 1 *et seq.*, and Title 28 of the United States Code, Section 2201 *et seq.*, but denies that the Complaint properly states such a claim or that such a claim is well-founded.  Invitrogen admits that jurisdiction is proper in this Court.  Otherwise, Invitrogen denies any remaining allegations contained in paragraph 3 of the Complaint.

4.    In response to the allegations in paragraph 4 of the Complaint, Invitrogen admits that venue is proper in this Court.

## COUNT I

5.    Invitrogen admits the allegations in paragraph 5 of the Complaint, and further states that Invitrogen owns all right, title, and interest in and to United States Patent No. 4,981,797 (the "4,981,797 patent").

6.    In response to the allegations in paragraph 6 of the Complaint, Invitrogen admits that it provided notice to Gene Choice that Invitrogen believes that Gene Choice may be infringing the 4,981,797 patent, and requested that Gene Choice provide information regarding the process or processes used to make Gene Choice cell lines, so that Invitrogen can confirm whether that process or those processes are within the scope of the 4,981,797 patent claims. Gene Choice has failed to provide the requested information.  Invitrogen further admits that a justiciable controversy exists between the parties with respect to this patent.  Invitrogen denies each and every remaining allegation in paragraph 6.

7.    Invitrogen denies the allegations in paragraph 7 of the Complaint.

8.    Invitrogen lacks sufficient information to admit or deny the allegations in paragraph 8 of the Complaint, and accordingly denies the same.

## COUNT II

9.      Invitrogen incorporates by reference its responses to paragraphs 1 through 8 as if fully set forth herein.

10.     Invitrogen states that it possesses an exclusive license in and to United States Patent No. 4,851,348 (the "'348 patent"), and that a copy of that patent is attached as Exhibit B to Gene Choice's Complaint.  Invitrogen otherwise denies the allegations of paragraph 10.

11.     In response to the allegations of paragraph 11 of the Complaint, Invitrogen admits that it provided notice to Gene Choice that Invitrogen believes that Gene Choice may be infringing the '348 patent.  Invitrogen further admits that a justiciable controversy exists between the parties with respect to this patent.  Invitrogen denies each and every remaining allegation in paragraph 11.

12.     Invitrogen denies the allegations in paragraph 12 of the Complaint.

13.     Invitrogen lacks sufficient information to admit or deny the allegations in paragraph 13 of the Complaint, and accordingly denies the same.

## COUNT III

14.     Invitrogen incorporates by references its responses to paragraphs 1 through 13 as if fully set forth herein.

15.     Invitrogen admits the allegations of paragraph 15 of the Complaint, and further states that Invitrogen owns all right, title, and interest in and to United States Patent No. 5,668,005 (the "'005 patent").

16.     In response to the allegations of paragraph 16 of the Complaint, Invitrogen admits that it provided notice to Gene Choice that Invitrogen believes that Gene Choice may be infringing the '005 patent.  Invitrogen further admits that a justiciable controversy exists between

the parties with respect to this patent.  Invitrogen denies each and every remaining allegation in paragraph 16.

17.     Invitrogen denies the allegations in paragraph 17 of the Complaint.

18.     Invitrogen lacks sufficient information to admit or deny the allegations in paragraph 18 of the Complaint, and accordingly denies the same.

## COUNT IV

19.     Invitrogen incorporates by references its responses to paragraphs 1 through 18 as if fully set forth herein.

20.     Invitrogen admits the allegations of paragraph 20 of the Complaint, and further states that Invitrogen owns all right, title, and interest in and to United States Patent No. 5,405,776 (the "'776 patent").

21.     In response to the allegations of paragraph 21 of the Complaint, Invitrogen admits that it provided notice to Gene Choice that Invitrogen believes that Gene Choice may be infringing the '776 patent.  Invitrogen further admits that a justiciable controversy exists between the parties with respect to this patent.  Invitrogen denies each and every remaining allegation in paragraph 21.

22.     Invitrogen denies the allegations in paragraph 22 of the Complaint.

23.     Invitrogen lacks sufficient information to admit or deny the allegations in paragraph 23 of the Complaint, and accordingly denies the same.

## COUNT V

24.     Invitrogen incorporates by references its responses to paragraphs 1 through 23 as if fully set forth herein.

4

25.    Invitrogen admits the allegations of paragraph 25 of the Complaint, and further states that Invitrogen owns all right, title, and interest in and to United States Patent No. 5,244,797 (the "5,244,797 patent").

26.    In response to the allegations of paragraph 26 of the Complaint, Invitrogen admits that it provided notice to Gene Choice that Invitrogen believes that Gene Choice may be infringing the 5,244,797 patent.  Invitrogen further admits that a justiciable controversy exists between the parties with respect to this patent.  Invitrogen denies each and every remaining allegation in paragraph 26.

27.    Invitrogen denies the allegations in paragraph 27 of the Complaint.

28.    Invitrogen lacks sufficient information to admit or deny the allegations in paragraph 28 of the Complaint, and accordingly denies the same.

## COUNT VI

29.    Invitrogen incorporates by references its responses to paragraphs 1 through 28 as if fully set forth herein.

30.    Invitrogen admits the allegations of paragraph 30 of the Complaint, and further states that Invitrogen owns all right, title, and interest in and to United States Patent No. 6,063,608 (the "'608 patent").

31.    In response to the allegations of paragraph 31 of the Complaint, Invitrogen admits that it provided notice to Gene Choice that Invitrogen believes that Gene Choice may be infringing the '608 patent.  Invitrogen further admits that a justiciable controversy exists between the parties with respect to this patent.  Invitrogen denies each and every remaining allegation in paragraph 31.

32.    Invitrogen denies the allegations in paragraph 32 of the Complaint.

33.     Invitrogen lacks sufficient information to admit or deny the allegations in paragraph 33 of the Complaint, and accordingly denies the same.

## COUNT VII

34.     Invitrogen incorporates by reference its responses to paragraphs 1 through 33 as if fully set forth herein.

35.     In response to the allegations in paragraph 35 of the Complaint, Invitrogen admits that it possesses and owns trade secrets.

36.     In response to the allegations in paragraph 36 of the Complaint, Invitrogen admits that it has provided notice to Gene Choice that it believes that Gene Choice may have misappropriated trade secrets belonging to Invitrogen.   Invitrogen further admits that a justiciable controversy exists between the parties with respect to Invitrogen trade secrets. Invitrogen denies each and every remaining allegation in paragraph 36.

37.     Invitrogen lacks sufficient information to admit or deny the allegations in paragraph 37 of the Complaint, and accordingly denies the same.

## AFFIRMATIVE DEFENSES

Invitrogen sets forth the following affirmative defenses and reserves the right to assert additional defenses and counterclaims if their existence is established through discovery or investigation:

### First Affirmative Defense

One, some, or all of Gene Choice's claims are barred by the doctrine of unclean hands.

### REQUEST FOR RELIEF

Accordingly, Invitrogen requests the following relief:

1.     A judgment dismissing Gene Choice's claims with prejudice;

2.    Pursuant to 35 U.S.C. § 285 and any other applicable statute or rule, an award of Invitrogen's costs and attorneys' fees incurred in defending against Gene Choice's claims in this action; and

3.    An order granting such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS

For its counterclaims against Counterclaim Defendants Gene Choice, Inc. ("Gene Choice"), Michael Smith ("Smith") and Brian Schmidt ("Schmidt"), Counterclaim Plaintiff Invitrogen Corporation ("Invitrogen") alleges:

### PARTIES

1.    Invitrogen is a Delaware corporation with a principal place of business located at 1600 Faraday Avenue, Carlsbad, California 92008.

2.    Gene Choice is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 7307 Governors Way, Frederick County, Maryland 21704.

3.    Upon information and belief, Michael Smith and Brian Schmidt are individuals residing in Maryland.

### JURISDICTION AND VENUE

4.    This is an action for, among other things, patent infringement under 35 U.S.C. §§ 271 *et seq.*, for misappropriation of trade secrets under the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law § 11-1201 *et seq.*, and for breach of contract under Maryland common law and failure to act in good faith under Md. Code Ann., Com. Law § 1-203.

5.    Jurisdiction in this Court is proper under 28 U.S.C. §§ 1338(a). Supplemental jurisdiction on Invitrogen's state law claims is proper under 28 U.S.C. § 1367(a).

6.     Venue in this Court is appropriate pursuant to 28 U.S.C. §§ 1400(b), 1391(b), and 1391(c).

## BACKGROUND

7.     United States Patent No. 4,981,797, titled "Process of Producing Highly Transformable Cells and Cells Produced Thereby" (the "4,981,797 patent"), issued on January 1, 1991. That patent generally relates to processes for producing transformable *Escherichia coli* ("*E. coli*") cells and to *E. coli* cells produced by those processes. A copy of the 4,981,797 patent is attached as Exhibit A.

8.     Invitrogen is the current owner of the entire right, title, and interest to the 4,981,797 patent with the right to sue and recover for past, present, and future infringement of that patent by virtue of Invitrogen's acquisition of the assignee, Life Technologies, Inc.

9.     Until about June 1, 2001 and August 10, 2001, respectively, Brian Schmidt and Michael Smith were employees of Invitrogen.

10.    As part of their employment by Invitrogen, Mr. Smith and Mr. Schmidt signed confidentiality agreements that provide, in part:

> I will maintain in secrecy all confidential information including but not limited to information relating to inventions, trade secrets, secret processes, improvements and discoveries, research and development data, reports and compilations, manufacturing and processing methods of [Invitrogen], and all other confidential information which may be known to others, but not generally known, such as cost estimates, proposals, forecasts, general correspondence, and the like, relating to [Invitrogen's] business, of which I may acquire knowledge in the course of and by virtue of my employment ...; I will neither disclose nor duplicate nor use by any means either directly or indirectly any such confidential information except for purposes of my employment by [Invitrogen] or as specifically authorized in writing in advance by [Invitrogen] .... I will be bound by this obligation both during and after my employment until such time as said confidential information shall become available to the general public without restriction.

11.    During their employment, Mr. Smith and Mr. Schmidt had access to and gained knowledge of Invitrogen's trade secrets and other confidential information, including but not

limited to information relating to customers and accounts for Invitrogen's competent cell products; and technical information relating to aspects of Invitrogen's manufacturing and processing methods for those products that were and are not generally known.

12.    Invitrogen sells and distributes *E. coli* cells that are encompassed by the claims of the 4,981,797 patent and that are manufactured using the processes claimed in the 4,981,797 patent.

13.    On information and belief, Gene Choice has been manufacturing and selling, or has had manufactured and/or sold on its behalf, *E. coli* cells produced according to the claims of the 4,981,797 patent, and which infringe claims of the 4,981,797 patent, either literally or by equivalents.    Those cells include at least Gene Choice's GC5 high efficiency chemically competent *E. coli* cells and GC10 chemically competent *E. coli* cells (collectively "GC5 and GC10 cells").

14.    On information and belief, Gene Choice has been marketing and selling the above identified products throughout the United States, including this district, through its efforts and the efforts of at least PGC Scientifics Corporation, a distributor for Gene Choice's products.

15.    For each allegation made on information and belief in this Complaint, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, Invitrogen believes that such allegations are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

16.    Invitrogen has undertaken reasonable efforts to determine Gene Choice's infringement of the 4,981,797 patent claims.    Invitrogen gave Gene Choice notice of the 4,981,797 patent, and has requested that Gene Choice provide Invitrogen information regarding the process or processes used to make Gene Choice's competent cells, so that Invitrogen can

confirm whether that process or those processes are within the scope of the 4,981,797 patent claims. Gene Choice has refused to supply that information to Invitrogen.

17. On information and belief, Invitrogen is not presently aware of any analytical technique that can be used to definitively establish that Gene Choice's competent cells are manufactured by a process or by processes encompassed by one or more of the claims of the 4,981,797 patent. For that reason, Invitrogen sought information concerning that process or those processes of Gene Choice. In the absence of such information, Invitrogen resorts to the judicial process and the aid of discovery to obtain under appropriate judicial safeguards such information as is required to confirm Invitrogen's belief and to present to this Court evidence that Gene Choice infringes one or more of the 4,981,797 patent claims, literally or by equivalents.

18. Gene Choice has actual and/or constructive notice of the existence of the 4,981,797 patent.

19. At no time has Invitrogen granted Gene Choice a license to make, sell, or use any product or process encompassed by the 4,981,797 patent claims.

20. Invitrogen is the only authorized manufacturer and seller of products falling within the scope of the 4,981,797 patent claims.

21. United States Patent No. 5,244,797, titled "Cloned Genes Encoding Reverse Transcriptase Lacking RNase H Activity" (the "5,244,797 patent"), issued on September 14, 1993. That patent generally relates to, among other things, certain polypeptides having DNA polymerase activity and substantially no RNase H activity wherein said polypeptide may be used for the preparation of full length cDNA without significant degradation of the mRNA template during first strand synthesis. A copy of the 5,244,797 patent is attached as Exhibit B.

22.    Invitrogen is the current owner of the entire right, title, and interest to the 5,244,797 patent with the right to sue and recover for past, present, and future infringement of that patent by virtue of Invitrogen's acquisition of the assignee, Life Technologies, Inc.

23.    United States Patent No. 5,405,776, titled "Cloned Genes Encoding Reverse Transcriptase Lacking RNase H Activity" (the "'776 patent"), issued on April 11, 1995.  That patent generally relates to, among other things, isolated DNA compounds comprising a DNA sequence encoding a polypeptides having DNA polymerase activity and substantially no RNase H activity wherein said polypeptide may be used for the preparation of full length cDNA without significant degradation of the mRNA template during first strand synthesis, a vector containing that DNA compound, a host cell transformed with that vector, and a method of producing polypeptides having DNA polymerase activity and substantially no RNase H activity comprising culturing the transformed hosts and isolating the reverse transcriptase so produced.  A copy of the '776 patent is attached as Exhibit C.

24.    Invitrogen is the current owner of the entire right, title, and interest to the '776 patent with the right to sue and recover for past, present, and future infringement of that patent by virtue of Invitrogen's acquisition of the assignee, Life Technologies, Inc.

25.    United States Patent No. 5,668,005, titled "Cloned Genes Encoding Reverse Transcriptase Lacking RNase H Activity" (the "'005 patent"), issued on September 16, 1997. That patent generally relates to, among other things, isolated DNA molecules comprising a nucleotide sequence encoding polypeptides having DNA polymerase activity and substantially no RNase H activity wherein said polypeptide may be used for the preparation of full length cDNA without significant degradation of the mRNA template during first strand synthesis, a method of preparing those DNA molecules, and incorporation of said polypeptides into kits.  A copy of the '005 patent is attached as Exhibit D.

11

26.     Invitrogen is the current owner of the entire right, title, and interest to the '005 patent with the right to sue and recover for past, present, and future infringement of that patent by virtue of Invitrogen's acquisition of the assignee, Life Technologies, Inc.

27.     United States Patent No. 6,063,608, titled "Cloned Genes Encoding Reverse Transcriptase Lacking RNase H Activity" (the "'608 patent"), issued on May 16, 2000. That patent generally relates to, among other things, certain polypeptides having DNA polymerase activity and that lack RNase H activity wherein said polypeptide may be used for the preparation of full length cDNA without significant degradation of the mRNA template during first strand synthesis. A copy of the '608 patent is attached as Exhibit E.

28.     Invitrogen is the current owner of the entire right, title, and interest to the '608 patent with the right to sue and recover for past, present, and future infringement of that patent by virtue of Invitrogen's acquisition of the assignee, Life Technologies, Inc.

29.     RNase H- minus reverse transcriptases fall squarely within the scope of one or more claims of the 5,244,797, '776, '005 and/or '608 patents.

30.     On information and belief, Gene Choice has actual and/or constructive notice of the 5,244,797, '776, '005, and '608 patents.

31.     At no time has Invitrogen granted to Gene Choice a license under the 5,244,797, '776, '005, and/or '608 patents for commercial purposes.

32.     On information and belief, Gene Choice is and has been selling RNase H-minus reverse transcriptase.

33.     On information and belief, Gene Choice's "Thermo-RT" product is an RNase H- reverse transcriptase.

34.    On information and belief, Gene Choice's "Thermo-RT" product falls within the scope of one or more claims of the 5,244,797, '776, '005, and/or '608 patents, either literally or by equivalents.

35.    On information and belief, Gene Choice is and has been selling RNase H- reverse transcriptase as a component in kits.

36.    On information and belief, Gene Choice's "cDNA Direct From Cells RT Kit" includes Gene Choice's "Thermo-RT" product.

37.    On information and belief, Gene Choice advertises and has advertised its "Thermo-RT" product in at least its distributors' product catalogues which it distributes, free of charge, to customers and potential customers throughout the world, and on Gene Choice's website (http://genechoiceinc.com).

## Claim One

(Direct Patent Infringement Against Gene Choice Based Upon 4,981,797 Patent)

38.    Invitrogen incorporates by reference the allegations contained in paragraphs 1 through 37 above.

39.    On information and belief, without authority from Invitrogen, Gene Choice has used processes for producing *E. coli* cells that infringe one or more of the claims of the 4,981,797 patent, literally or by equivalents, and thus has directly infringed those claims.

40.    On information and belief, without authority from Invitrogen, Gene Choice has made, used, offered for sale, and/or sold *E. coli* cells that infringe one or more of the claims of the 4,981,797 patent, literally or by equivalents, and thus has directly infringed those claims.

41.    On information and belief, Gene Choice has willfully and deliberately infringed the claims of the 4,981,797 patent.

42.    On information and belief, if Gene Choice had not used processes and/or not made, used, or sold products that infringe one or more claims of the 4,981,797 patent, the past, present, and potential future parties purchasing competent cells from Gene Choice would have purchased those cells from Invitrogen.

43.    Invitrogen has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law as a result of Gene Choice's direct infringement of the 4,981,797 patent.  Such unlawful acts and damage will continue unless enjoined by this Court.

**Claim Two**

(Inducing Patent Infringement Against Gene Choice Based Upon 4,981,797 Patent)

44.    Invitrogen incorporates by reference the allegations contained in paragraphs 1 through 43 above.

45.    Gene Choice is and has been actively inducing others, including at least PGC Scientifics Corporation, to infringe claims of the 4,981,797 patent by having others offer to sell and sell Gene Choice's competent cells, without authority from Invitrogen.

46.    Gene Choice's distributors or resellers who offer to sell and/or sell Gene Choice's competent cells directly infringe the 4,981,797 patent, either literally or by equivalents.

47.    Gene Choice is and has been actively inducing others to infringe claims of the 4,981,797 patent by publishing advertisements and instructions intended to persuade others to use Gene Choice's competent cells that fall within the scope of the 4,981,797 patent, without authority from Invitrogen.

48.    Gene Choice's customers who purchase and subsequently use Gene Choice's competent cells directly infringe the 4,981,797 patent, either literally or by equivalents.

49.    Gene Choice is and has been actively inducing others to infringe claims of the 4,981,797 patent by asking or allowing others to use processes that infringe the 4,981,797 patent.

50.    Gene Choice's manufacturers who offer to manufacture and/or manufacture Gene Choice's competent cells directly infringe the 4,981,797 patent, either literally or by equivalents.

51.    On information and belief, Gene Choice has willfully and deliberately induced infringement of the claims of the 4,981,797 patent.

52.    Invitrogen has been damaged and will continue to be damaged by Gene Choice's infringing acts.  Such unlawful acts and damage will continue unless enjoined by this Court.

## Claim Three

(Misappropriation of Trade Secrets Pursuant to Md. Code, Commercial Law, § 11-1201 *et. seq.*, Against Gene Choice, Smith and Schmidt)

53.    Invitrogen incorporates by reference the allegations set forth in paragraphs 1 through 52 above.

54.    Invitrogen possesses valid trade secrets in certain information, including but not limited to information relating to customers and accounts for Invitrogen's competent cell products, and technical information relating to aspects of Invitrogen's manufacturing and processing methods for those products.

55.    The trade secrets possessed by Invitrogen derive independent economic value from not being generally known to, or readily ascertainable by, other persons, and Invitrogen has undergone reasonable efforts to maintain their secrecy.

56.    Gene Choice, Smith and/or Schmidt have acquired Invitrogen's trade secrets.

57.    Gene Choice, Smith and/or Schmidt either knew or should have known that its acquisition of Invitrogen's trade secrets were by improper means.

58.    Gene Choice, Smith and/or Schmidt have used and/or disclosed Invitrogen's trade secrets without the consent of Invitrogen.

59.    Gene Choice, Smith and/or Schmidt's use and/or disclosure of Invitrogen's trade secrets were by improper means, or derived from someone who utilized improper means to

acquire such trade secrets, and/or derived from someone who owed a duty to Invitrogen to maintain the secrecy of such trade secrets.

60.     Gene Choice, Smith and/or Schmidt's use and/or disclosure of Invitrogen's trade secrets were done willfully and maliciously.

61.     Invitrogen has suffered damage as a result of Gene Choice, Smith and/or Schmidt's use and/or disclosure of Invitrogen's trade secrets.

### Claim Four

(Breach of Contract Against Smith & Schmidt)

62.     Invitrogen incorporates by reference the allegations set forth in paragraphs 1 through 61 above.

63.     Invitrogen and counterclaim defendant Schmidt entered into a valid and binding contract on or about November 26, 1985 and again on or about June 1, 2001.

64.     Invitrogen and counterclaim defendants Smith entered into a valid and binding contract on or about October 31, 1988 and again on or about August 10, 2001.

65.     Smith and Schmidt breached their contract with Invitrogen by, among other things, disclosing and using Invitrogen's trade secrets and other confidential information gained during their employment at Invitrogen.

66.     Invitrogen has suffered direct and/or consequential damages as a result of Smith and Schmidt's breaches of their contract with Invitrogen.

### Claim Five

(Direct Patent Infringement Against Gene Choice Based Upon
the 5,244,797, '776, '005, and '608  Patents)

67.     Invitrogen incorporates by reference the allegations contained in paragraphs 1 through 66 above.

68.    Upon information and belief, Gene Choice is and has been infringing one or more claims of the 5,244,797, '776, '005 and '608 patents by using and selling and causing to be used in this Judicial District and elsewhere in the United States, for commercial purposes and without authority, polypeptides having DNA polymerase activity and lacking RNase H activity wherein said polypeptide may be used for the preparation of full length cDNA without significant degradation to the mRNA template during first strand synthesis.

69.    Invitrogen has been damaged and will continue to be damaged by the aforesaid infringing acts of Gene Choice.

70.    Gene Choice's infringing acts will continue unless enjoined by this Court.

71.    Upon information and belief, the acts of infringement complained of herein have been carried out willfully and with willful knowledge by Gene Choice of Invitrogen's 5,244,797, '776, '005, and/or '608 patents.

### Claim Six

(Inducing Patent Infringement Against Gene Choice Based Upon
the 5,244,797, '776, '005, and '608 patents)

72.    Invitrogen incorporates by reference the allegations contained in paragraphs 1 though 71 above.

73.    Upon information and belief, Gene Choice is and has been actively inducing others to infringe one or more claims of the 5,244,797, '776, '005, and/or '608 patents by publishing advertisements and instructions intended to persuade others to use polypeptides having DNA polymerase activity and lacking RNase H activity, including but not limited to, its "Thermo-RT" product, without authority.

74.    Gene Choice's customers who purchase and subsequently use Gene Choice's RNase H- minus reverse transcriptase products, including but not limited to, "Thermo-RT,"

directly infringe one or more claims of the 5,244,797, '776, '005, and/or '608 patents, either literally or by equivalents.

75.    Upon information and belief, Gene Choice is and has been actively inducing others to infringe one or more clams of the 5,244,797, '776, '005, and/or '608 patents by publishing advertisements and instructions intended to persuade others to use Gene Choice's kits containing RNase H- minus reverse transcriptase, including but not limited to, its "cDNA Direct From Cells RT Kit," without authority.

76.    Gene Choice's customers who purchase and subsequently use Gene Choice's kits containing RNase H- reverse transcriptase, including "cDNA Direct From Cells RT Kit," directly infringe one or more claims of the 5,244,797, '776, '005, and/or '608 patents, either literally or by equivalents.

77.    Invitrogen has been damaged and will continue to be damaged by the aforesaid infringing acts of Gene Choice.

78.    Gene Choice's infringing acts will continue unless enjoined by this Court.

79.    Upon information and belief, the acts of infringement complained of herein have been carried out willfully and with willful knowledge by Gene Choice of Invitrogen's 5,244,797, '776, '005, and/or '608 patents.

**JURY DEMANDED**

Invitrogen, pursuant to Rule 38 of the Federal Rules of Civil Procedure, demands that a jury be impaneled to determine all claims and issues triable by a jury in this action.

## REQUEST FOR RELIEF

Invitrogen requests the following relief:

1.      A judgment that Counterclaim Defendant Gene Choice has infringed one or more claims of United States Patent No. 4,981,797; United States Patent No. 5,244,797; United States Patent No. 5,405,776; United States Patent No. 5,668,005; and/or United States Patent No. 6,063,608.

2.      Pursuant to 35 U.S.C. § 283, a preliminary and permanent injunction restraining Counterclaim Defendant Gene Choice and its agents, servants, employees, attorneys, directors, successors, assigns, and all those in active concert or participation with Counterclaim Defendant Gene Choice, from committing further acts of infringement, or inducing infringement, of United States Patent No. 4,981,797, United States Patent No. 5,244,797, United States Patent No. 5,405,776, United States Patent No. 5,668,005, and/or United States Patent No. 6,063,608 during the pendency of this action and permanently afterward;

3.      An order that Counterclaim Defendant Gene Choice destroy all *E. coli* cells in its custody, possession, or control, that infringe any claims of United States Patent No. 4,981,797, and that Counterclaim Defendant Gene Choice file with this Court a written report, under oath, setting forth in detail the manner and form in which Counterclaim Defendant Gene Choice has complied with that order and with this Court's injunction;

4.      An order that Counterclaim Defendant Gene Choice destroy all of its RNase H-minus reverse transcriptase, including "Thermo-RT," in its custody, possession, or control, that infringes any claims of United States Patent No. 5,244,797; United States Patent No. 5,405,776; United States Patent No. 5,668,005; and/or United States Patent No. 6,063,608, and that Counterclaim Defendant Gene Choice file with this Court a written report, under oath, setting

forth in detail the manner and form in which Counterclaim Defendant Gene Choice has complied with that order and with this Court's injunction;

5.      Pursuant to 35 U.S.C. § 284, an award to Invitrogen of all compensable damages based on lost profits, reduced profits, lost royalties, pre-judgment and post-judgment interest, costs, and/or for any other available form of relief based on any form of recoverable economic injury sustained by Invitrogen as a result of Counterclaim Defendant Gene Choice's patent infringement, and that those damages be trebled as a result of Counterclaim Defendant Gene Choice's willful and deliberate infringement;

6.      Pursuant to 35 U.S.C. § 285, a judgment that this case be deemed exceptional and that Invitrogen be awarded its costs and attorneys' fees incurred in this action;

7.      An award to Invitrogen of all compensable damages based upon Counterclaim Defendants' Gene Choice, Michael Smith and Brian Schmidt's misappropriation of trade secrets, including an award of attorneys' fees and exemplary damages;

8.      An award of Invitrogen of all compensable damages based upon Counterclaim Defendants' Michael Smith and Brian Schmidt's breach of contract; and

9.      An order granting such other and further relief as this Court deems just and proper.

DATED this **3 1** day of March, 2003.

Respectfully submitted,

Robert J. Koch
Christopher M. Gerlach (MD 26762)
MILBANK, TWEED, HADLEY &
MCCLOY LLP
International Square Building
11th Floor
1825 Eye Street, N.W.
Washington, D.C., 20006

Telephone:  (202) 835-7520
Facsimile:  (202) 835-7586

Francis M. Wikstrom
C. Kevin Speirs
David M. Bennion
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Post Office Box 45898
Salt Lake City, Utah  84145-0898
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

Attorneys for Invitrogen Corporation

Plaintiff's Address:

Invitrogen Corporation
1600 Faraday Avenue
Carlsbad, CA 92008